## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**WEIPENG SHEN**
2723 E. Thompson Street
Philadelphia, PA 19134

        *Plaintiff,*

        vs.

**MERCK & CO., INC.**
126 East Lincoln Avenue
Rahway, NJ 07065

        -and-

**PYRAMID CONSULTING, INC.**
3060 Kimball Bridge Road, Suite 200
Alpharetta, GA 30022

        *Defendants.*

NO. _____

CIVIL ACTION

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, Weipeng ("William") Shen, by and through undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Defendants Merck & Co., Inc. ("Merck") and Pyramid Consulting, Inc. ("Pyramid") (collectively, "Defendants") of the Americans with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), Title VII of the Civil Rights Act of 1964 ("Title VII"- 42 U.S.C. § 2000e *et seq.*), the Pennsylvania Human Relations Act ("PHRA" – 43 P.S. § 951 *et seq.*), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), the Fair Labor Standards Act ("FLSA" - 29 U.S.C. § 201, *et. seq.*), the Pennsylvania Minimum Wage Act ("PMWA" – 43 P. S. § 333.101 *et. seq.*), and the Pennsylvania

1

Wage Payment and Collection Law ("WPCL" – 43 P.S. § 260.1 *et seq.*).[1] Plaintiff was not paid his contractually agreed upon wages and/or overtime at one-and-one-half times his hourly rate for all hours worked over forty (40) in a workweek and unlawfully terminated by Defendants.

2.      Plaintiff has suffered damages more fully described/sought herein.

## JURISDICTION AND VENUE

3.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

4.      This Court may properly maintain personal jurisdiction over each Defendant because each Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over each Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

5.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

6.      Plaintiff exhausted federal administrative remedies for claims under Title VII by first filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and receiving a notice of right to sue.

## PARTIES

7.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

---

[1] Plaintiff identifies that he will pursue PHRA claims herein for notice purposes only. He omits such claims in the Count Section of this Complaint. Plaintiff will move to amend the instant lawsuit to include PHRA claims upon completion of administrative exhaustion (or waiver of exhaustion by Defendants).

8. Plaintiff is an adult individual, with an address as set forth in the caption.

9. Merck is believed and therefore averred to be a for-profit corporation organized and existing under the laws of the State of New Jersey with a principal place of business at the above-captioned address.

10. Merck operates a facility located at 770 Sumneytown Pike, West Point, PA 19486.

11. Merck, who does business outside the United States and Canada as Merck Sharp & Doane LLC, is a global pharmaceutical company focused on discovering, developing, manufacturing, and marketing prescription medicines, vaccines, biologic therapies, and animal health products.

12. Merck employed at least five hundred (500) employees during Plaintiff's employment with Merck.

13. Pyramid is believed and therefore averred to be a for-profit corporation organized and existing under the laws of the State of Georgia with a principal place of business at the above-captioned address.

14. Pyramid is a professional staffing company that places employees to work within some of the largest companies in the United States, including Merck.

15. Pyramid employed at least five hundred (500) employees during Plaintiff's employment with Pyramid.

16. It is believed and therefore averred that Pyramid has a contractual relationship with Merck, directly and/or through its agent/representative, to provide temporary employees at Merck's West Point, PA facility.

17. Pyramid exercises significant control over these temporary employees, including Plaintiff, by among other things: (1) hiring and placing them at Merck's West Point, PA facility

(subject to Merck's approval); (2) setting their rates of pay; (3) paying them for their hours worked; (4) managing their payroll taxes; (5) approving their time sheets; and, (6) handling various HR functions such as reviewing and investigating workplace complaints, in consultation with Merck management.

18.     Merck exercises significant control over these temporary employees, including Plaintiff, by among other things: (1) selecting (or refusing to select) them for work at Merck's West Point facility; (2) assigning their work assignments; (3) supervising their daily work and assignments; (4) deciding their work schedules and whether they are permitted to work remotely; (5) providing feedback regarding their work performance; and, (6) handling various HR functions such as reviewing and investigating workplace complaints, in consultation with Pyramid management.

19.     It is believed and therefore averred that Pyramid and Merck have a contractual agreement whereby Merck pays Pyramid a fee for Pyramid's temporary employees to also work for Merck.

20.     These temporary employees, including Plaintiff, are intended third-party beneficiaries of the contract between Merck and Pyramid.

21.     Because of their interrelation of operations, collaborative control of labor relations, human resources and training, collaborative management of their employees, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, and management that they may be treated as a single and/or joint employer. *See Faush v. Tuesday Morning, Inc.*, 808 F.3d 209 (holding that temporary employees of staffing agency are also employees of their clients where there is shared control).

4

22.     At all times relevant herein, each Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

23.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

24.     Plaintiff is a Chinese male.

25.     Plaintiff was employed by both Pyramid and Merck.

26.     Plaintiff was placed to work at Merck by Pyramid on or about October 21, 2024 (Plaintiff's first day of employment).

27.     Plaintiff was employed as a Scientist – III (Senior).

28.     Plaintiff was hired by Pyramid and placed at Merck's West Point, PA facility with Merck's approval.

29.     Pyramid set Plaintiff's rate of pay and tracked his hours worked by reviewing and approving his timesheets.

30.     Pyramid was responsible for managing Plaintiff's payroll taxes.

31.     Pyramid also handled various HR functions such as reviewing and investigating Plaintiff's workplace complaints, in consultation with Merck management.

32.     Merck determined Plaintiff's job assignments and supervised his daily work.

33.     Merck decided when Plaintiff would need to be working and also whether he needed to work in the office or could work from home.

34.     Merck, through it's managers/supervisors, provided feedback to Plaintiff regarding his work performance.

5

35. Merck also handled various HR functions such as reviewing and investigating Plaintiff's workplace complaints, in consultation with Pyramid management.

36. Merck also has "direct employees" who are treated as full time employees of Merck.

37. Plaintiff performed the same job as these direct employees.

38. Plaintiff was placed by Pyramid to work (and with) Merck with the prospect of becoming a direct employee (a well-known contract-to-hire role).

39. Plaintiff was required to abide by all Pyramid and Merck policies and guidelines.

40. Plaintiff worked within Merck's facilities using only Merck equipment, supplies and tools.

41. Plaintiff was scheduled to work as would be any other employee: he was assigned a Merck badge, required to acknowledge Merck rules, and issued a Merck laptop.

42. Plaintiff was assigned daily/weekly duties, tasks, and projects managed daily by Merck personnel.

43. While employed with Defendants, Plaintiff did not supervise employees, have the ability to hire or terminate employees, and did not evaluate employees or perform typical supervisory functions.

44. Additionally, while employed with Defendants, Plaintiff did not make decisions for Defendants concerning matters related to operating the business, such as entering into binding contracts, advertising matters, or other fiscal matters.

45. Plaintiff merely performed routine laboratory tasks and did not exercise any meaningful discretion in the performance of his job.

46.     Plaintiff was terminated involuntarily by both Merck and Pyramid on or about June 27, 2025.

47.     In total, Plaintiff was employed by Defendants for approximately eight (8) months.

48.     Some documentation as part of Plaintiff's orientation, onboarding, and hiring identified Plaintiff's initial term would be "12 months."

49.     However: (a) many people similarly situated to Plaintiff worked well beyond such initial terms (as renewals are the norm); (b) many people were offered actual employment by Merck after a period of time (as the role is discussed as a contract-to-hire position); (c) Merck has a perpetual need for Plaintiff's role as a placed or direct employee (despite a placeholder duration listing in a document); and, (d) Plaintiff's damages due to loss of employment (emotional impact) cannot be measured by an artificial placeholder timeframe (when Plaintiff could have been directly hired **or** remained employed indefinitely through ongoing renewals).

50.     While employed, Plaintiff's primary manager was Merck employee David Foley ("Foley").

51.     Foley (a Caucasian male) works for Merck as a Director, Analytical Research and Development.

52.     Foley has upon information and belief held such a role for the last approximate three (3) years.

53.     Foley oversaw Plaintiff from a supervisory standpoint, controlled project assignments, and directed all aspects of Plaintiff's employment with and for Merck.

54.     While employed jointly by Pyramid and Merck, Plaintiff was paid a contractual hourly rate of $47 per hour.

55.     Although Plaintiff was required to report all hours worked, Foley *repeatedly* had Plaintiff work more than forty (40) hours in a work week and put on his timesheet that he had only worked forty (40) hours that week, which was not accurate.

56.     Plaintiff asked Foley why he was not getting paid for the hours he worked above forty (40) in the work week, but Foley just told him to only list that he worked for forty (40) hours.

57.     It happened many times that Plaintiff was not paid anything, let alone overtime, by Pyramid for his hours worked over forty (40) in a work week due to Foley's direction to only list forty (40) hours on his timesheet.

58.     Pyramid made *no effort* to correct or investigate this discrepancy in Plaintiff's pay.

59.     Regarding Plaintiff's discrimination claims, this is a case about: (a) Merck employing *a blatantly racist* direct employee who was openly discriminatory towards Plaintiff; (b) Merck's racist employee subjecting Plaintiff to a hostile work environment; (c) a failure on the part of both Pyramid *and* Merck to resolve or abate Plaintiff's hostile work environment; and, (d) a resultant termination whereby Plaintiff was retaliatory released from his job (while Merck *retained* such racist employee).

60.     The racist employee to whom Plaintiff refer herein is Merck employee Shoval Resnick ("Resnick").

61.     Resnick was at all times relevant herein a full-time scientist working as a direct (non-contract) employee of Merck.

62.     Plaintiff initially interacted with Resnick from in or about February 2025 through in or about April 2025 (a period of several months).

63.     Prior to the timeframe of February of 2025, Plaintiff received positive feedback, had no concerns or problems, and was performing well.

64.     In or about February of 2025, Resnick and Plaintiff were placed to work on the same project together (until the April 2025 timeframe).

65.     After a short reprieve from working with her (for several weeks), Plaintiff was again assigned to the same project as Resnick from in or about May 2025 through Plaintiff's termination (on or about June 27, 2025).

66.     Here is just *a sampling* of the types of things Resnick said when around Plaintiff or in his presence. She repeatedly:

   a)     asked if Plaintiff was "legal;"

   b)     asked Plaintiff if he lost his job would he be sent back to China;

   c)     suggested ICE may deport Plaintiff;

   d)     commented about how Plaintiff's family would be impacted if he can't keep his job or is deported;

   e)     told Plaintiff she thought Chinese people or Chinese scientists were supposed to be brilliant and asking why Plaintiff is so dumb?;

   f)     called Plaintiff inept, stupid or dumb; and,

   g)     told Plaintiff she is Israeli, and anything made in China pales in comparison to products of the US and Israel and that Chinese products are inferior or low quality.

67.     These types of comments Plaintiff reference above were stated to Plaintiff in many iterations (of the above examples) on a daily or weekly basis and as mentioned above, repeatedly.

68.     Resnick could not stand Plaintiff because he was Chinese (or not Caucasian / American / Israeli).

69.     Resnick would yell at Plaintiff and speak to him a in a derogatory manner all the time (often using profanity) to the point where people passing would ask "who is that," "why did she talk to you like that," and "are you okay" (among other similar inquiries).

9

70. Resnick constantly said, "I will fire you" or "I will get you fired" and other iterations of her threatening Plaintiff's job despite that she was not in such a management position so as to have that authority (or so he believed).

71. Resnick's blatant harassment did not stop with the above.

72. Resnick at times attempted to follow Plaintiff on the campus.

73. Resnick questioned Plaintiff about going to lunch (as in how long he had been at lunch) or where he went to lunch.

74. If Plaintiff used the restroom, Resnick questioned him.

75. And it was not pleasant. Resnick would say things like "where the fuck were you," "what the fuck were you doing," or "I don't give a shit" when Plaintiff responded.

76. In both periods of time that Plaintiff worked with Resnick, he was subjected to an extremely hostile work environment.

77. Plaintiff complained of "discrimination," mistreatment for being "Chinese," and racism during both periods of working with Resnick.

78. Plaintiff specifically complained to *both Merck and Pyramid* about Resnick's racism and harassment,

79. Specifically, Plaintiff complained to Foley (Plaintiff's direct management at Merck) on several occasions and to Vikrant Rawat ("Rawat") (Executive – US Human Resources for Pyramid).

80. Plaintiff provided many examples of bullying, animosity, racist commentary, discriminatory treatment, and overall abuse(s) that he was enduring.

81. Plaintiff's hostile work environment was not resolved or mitigated, and he was required to continue working with Resnick through termination.

82.     Plaintiff has irritable bowel syndrome ("IBS") and gastrointestinal issues.  These medical conditions qualify as disabilities because they substantial impair major life activities, including eating, going to the bathroom, and working.

83.     Plaintiff had shared with Foley and Pyramid management that he had gastrointestinal issues and irritable bowel syndrome ("IBS") when explaining that on occasion he needed a sporadic restroom break (when complaining of discriminatory treatment and Resnick's bathroom scrutiny).

84.     Plaintiff's infrequent breaks did not interfere with his job performance, but he was compelled to disclose such health problems considering the harassment he was receiving if he even went to the bathroom at all by Resnick.

85.     As time progressed closer to Plaintiff's termination, he was enduring insomnia, anxiety, and depression.

86.     Plaintiff vocalized his progressing health problems when trying to seek redress for ongoing mistreatment (leading up to Plaintiff's termination from employment).

87.     Plaintiff was assured by Pyramid that it had raised his discrimination concerns directly to Merck (in addition to his complaints to Foley).

88.     The gist of what Plaintiff was being told from *both Merck and Pyramid* was in essence, keep working and his concerns are either being looked into or escalated.

89.     There was so much hostility towards Plaintiff, it even reflected in non-responsiveness to Plaintiff's daily job.

90.     To provide an example towards the end of Plaintiff's employment: (1) on or about May 27, 2025, Merck received stability samples for a vaccine; (2) there was a 28-day window to test such samples; (3) Plaintiff did so very promptly *and in line with the protocol provided by*

11

*Merck*; (4) Plaintiff's notebook (and data) was submitted in review for almost a month without any response, update, or adjustments requested of him (an unusually long timeframe); and, (5) on June 26, 2025 (one (1) day before the June 27, 2025 deadline), Plaintiff was asked to use a re-agent (not in a prior protocol).

91.    Plaintiff of course did anything requested of him notwithstanding obstacles and non-responsiveness, and it was Resnick and his immediate management with Merck who were responsible for such data review and responsiveness.

92.    On June 27, 2025, Plaintiff was contacted by Renu Patel ("Patel"), "Executive – US HR" for Pyramid.

93.    Via phone, Plaintiff was informed by Patel that Plaintiff's management at Merck no longer wanted him there and had directed Pyramid to inform him that he was to cease working effectively immediately.

94.    Plaintiff was then sent a confirming email (on June 27, 2025) by Patel stating *inter alia*: "As discussed over the phone, please note that today, June 27, 2025, is your final working day at Merck Sharp & Dohme Corp. Kindly do not report to work going forward."

95.    Not only was Plaintiff subjected to a hostile work environment and terminated unlawfully (for discriminatory and retaliatory reasons) by Merck, Pyramid is also liable for: (a) failing to properly intervene to maintain contractual relations with Merck (and facilitating Plaintiff's termination); and, (b) not promptly reassigning or otherwise placing Plaintiff in many available opportunities (which is discriminatory and retaliatory as well).

96.    Defendants discriminated against Plaintiff and terminated him because of his race/national origin/ and/or because of his disabilities.

97.     Defendants subjected Plaintiff to a hostile work environment because of his race/national origin and/or his disabilities.

98.     Defendants failed to engage in an interactive process to provide Plaintiff with a reasonable accommodation for his disabilities (uninterrupted restroom breaks as needed).

99.     Defendants retaliated against Plaintiff and terminated him because of his good faith complaints of discrimination based on race/national origin and or because of his request for a reasonable accommodation for his disabilities.

**COUNT I**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Race/ National Origin Discrimination; [2] Hostile Work Environment; and [3] Retaliation)**
**-Against Both Defendants-**

100.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

101.     During Plaintiff's employment with Defendants, he was subjected to discrimination through disparate treatment, verbal admonishment, and derogatory and disparate treatment because of his race/national origin.

102.     Plaintiff complained to Defendants' management about the discriminatory conduct and hostile work environment that he was being subjected to because of his race/national origin.

103.     Instead of investigating Plaintiff's aforesaid complaints, Defendants' management ignored them, left his legitimate concerns unresolved, and subjected him to further hostility and animosity.

104.     Following his complaints of race/national origin discrimination (discussed *supra*), Defendants terminated Plaintiff's employment.

105.    Based on the foregoing, Plaintiff believes and avers that his race/national origin was a motivating and/or determinative factor in his termination.

106.    Plaintiff also believes and therefore avers that he was subjected to a hostile work environment because of his race/national origin.

107.    Plaintiff also believes and therefore avers that he suffered retaliation and/or a retaliatory hostile work environment for engaging in protected activity under Title VII.

108.    These actions as aforesaid constitute unlawful discrimination, hostile work environment, and retaliation under Title VII.

**COUNT II**
**<u>Violations of 42 U.S.C. § 1981</u>**
**([1] Race/National Origin Discrimination; [2] Hostile Work Environment; and [3] Retaliation)**
**-Against Both Defendants-**

109.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

110.    During Plaintiff's employment with Defendants, he was subjected to discrimination through disparate treatment, verbal admonishment, and derogatory and disparate treatment because of his race/national origin.

111.    Plaintiff complained to Defendants' management about the discriminatory conduct and hostile work environment that he was being subjected to because of his race/national origin.

112.    Instead of investigating Plaintiff's aforesaid complaints, Defendants' management ignored them, left his legitimate concerns unresolved, and subjected him to further hostility and animosity.

113.    Based on the foregoing, Plaintiff believes and avers that his race/national origin was a motivating and/or determinative factor in his termination.

14

114.   Plaintiff also believes and therefore avers that he was subjected to a hostile work environment because of his race/national origin.

115.   Plaintiff also believes and therefore avers that he was terminated in retaliation for engaging in protected activity under 42 U.S.C. § 1981.

116.   These actions as aforesaid constitute unlawful discrimination and retaliation under 42 U.S.C. § 1981.

**COUNT III**
**<u>Violations of the ADA</u>**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)**
**-Against Both Defendants-**

117.   The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

118.   Plaintiff suffers from qualifying health conditions under the ADA, which affected his ability (at times) to perform some daily life activities (set forth *supra*).

119.   Despite Plaintiff's aforementioned health conditions and limitations, he was still qualified and able to perform the duties of his job well with Defendants.

120.   Prior to his pretextual termination, Plaintiff disclosed his aforementioned disabilities/serious medical conditions and need for accommodations (uninterrupted restroom breaks as needed) to Defendants' management and in response, was subjected to hostility and outright refusal to accommodate.

121.   Plaintiff therefore avers that his actual/perceived disabilities or record of impairment were a motivating/determinative factor in the termination of his employment with Defendants.

122. Plaintiff also avers Defendants intentionally frustrated the interactive process and then terminated him in retaliation for engaging in protected activity (requesting and using accommodations) under the ADA.

123. Defendants' actions as aforesaid constitute violations of the ADA.

**Count IV**
**Violations of the Fair Labor Standards Act ("FLSA")**
**(Failure to Pay Overtime Wages)**
**-Against Both Defendants-**

124. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

125. At all times relevant herein, Defendants are, and continue to be, "employer[s]" within the meaning of the FLSA.

126. At all times relevant herein, Plaintiff was an "employee" within the meaning of the FLSA.

127. The FLSA requires covered employers, such as Defendants, to minimally compensate its "non-exempt" employees, such as Plaintiff, at a rate of 1.5 (one and a half) times the employee's regular rate of pay for each overtime hour that the employee works (i.e. hours in excess of 40 (forty) hours in a workweek).

128. At all times during his employment with Defendants, Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

129. Defendants knew that Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

130. Defendants failed to pay Plaintiff 1.5 (one and a half) Plaintiff's regular rate of pay for each hour that he worked over 40 (forty) hours each workweek.

16

131. As a result of Defendants' failure to pay Plaintiff overtime compensation due to him, Defendants violated the FLSA and caused Plaintiff to suffer damages in the form of unpaid overtime compensation.

## Count V
## Violations of the Fair Labor Standards Act ("FLSA")
### (Retaliation)
### -Against Both Defendants-

132. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

133. Defendants retaliated against Plaintiff and/or terminated Plaintiff in substantial part because of his complaints to Defendants' management that he was not being properly compensated for his overtime hours.

134. Any retaliation against Plaintiff for exercising his statutory rights to complain of unpaid overtime was *per se* unlawful. *See Kasten v. Saint-Gobain Performance Plastics Corp.,* 563 U.S. 1, 131 S. Ct. 1325, 179 L. Ed. 2d 379 (2011) (it is illegal under the FLSA to retaliate against an employee for verbal or written concerns of unpaid overtime compensation within a workplace).

135. Defendants' termination of Plaintiff due to his complaints of unpaid overtime wages constitutes unlawful retaliation and a violation of the FLSA.

## Count VI
## Violations of the Pennsylvania Minimum Wage Act ("PMWA")
### (Failure to Pay Overtime Wages)
### -Against Both Defendants-

136. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

137. At all times relevant herein, Defendants are, and continue to be, "employer[s]" within the meaning of the PMWA.

138. At all times relevant herein, Plaintiff was an "employee" within the meaning of the PMWA.

139. The PMWA requires covered employers, such as Defendants, to minimally compensate its "non-exempt" employees, such as Plaintiff, at a rate of 1.5 (one and a half) times the employee's regular rate of pay for each overtime hour that the employee works (i.e. hours in excess of 40 (forty) hours in a workweek).

140. At all times during his employment with Defendants, Plaintiff was a "non-exempt" employee within the meaning of the PMWA.

141. Defendants knew that Plaintiff was a "non-exempt" employee within the meaning of the PMWA.

142. Defendants failed to pay Plaintiff 1.5 (one and a half) Plaintiff's regular rate of pay for each hour that he worked over 40 (forty) hours each workweek.

143. As a result of Defendants' failure to pay Plaintiff overtime compensation due to him, Defendants violated the PMWA and caused Plaintiff to suffer damages in the form of unpaid overtime compensation.

**Count VII**
**Violations of the Pennsylvania Wage Payment and Collection Law**
**(Failure to Pay Overtime Wages)**
**-Against Both Defendants-**

144. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

145.    Plaintiff had an agreement with Defendants whereby Defendants agreed to compensate Plaintiff for services he performed during his employment.

146.    Defendants failed to compensate Plaintiff for all wages owed during his employment with Defendants.

147.    Plaintiff performed the agreed-upon services for Defendants, and Defendants failed to properly compensate Plaintiff for the services rendered as specified by the Parties' employment agreement (included but not limited to paying Plaintiff for all hours worked).

148.    These actions as aforesaid constitute violations of the Pennsylvania Wage Payment and Collection Law.

149.    Plaintiff has suffered damages as set forth more fully herein.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendants are to promulgate and adhere to a policy prohibiting discrimination in the future against any employee(s);

B.    Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.    Plaintiff is to be awarded liquidated damages and/or punitive damages as appropriate, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

19

D.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.    Plaintiff demands trial by jury on all issues so triable pursuant to Fed.R.Civ.P. 38.


Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**


By:

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
akarpf@karpf-law.com
(215) 639-0801


Dated:  March 31, 2026

20

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

|  |  |  |
|---|---|---|
| Weipeng Shen | : | CIVIL ACTION |
| v. | : | |
| Merck & Co., Inc., et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court.  (See reverse side of this form for a detailed explanation of special
     management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (x )

| 3/31/2026 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: __Defendants place of business_____

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1.  Does this case involve property included in an earlier numbered suit?                                                      Yes ☐

2.  Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?     Yes ☐

3.  Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4.  Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?   Yes ☐

5.  Is this case related to an earlier numbered suit even though none of the above categories apply?   Yes ☐
    If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

A.  *Federal Question Cases:*

- ☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2.  FELA
- ☐ 3.  Jones Act-Personal Injury
- ☐ 4.  Antitrust
- ☐ 5.  Wage and Hour Class Action/Collective Action
- ☐ 6.  Patent
- ☐ 7.  Copyright/Trademark
- ☐ 8.  Employment
- ☐ 9.  Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief  **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

B.  *Diversity Jurisdiction Cases:*

- ☐ 1.  Insurance Contract and Other Contracts
- ☐ 2.  Airplane Personal Injury
- ☐ 3.  Assault, Defamation
- ☐ 4.  Marine Personal Injury
- ☐ 5.  Motor Vehicle Personal Injury
- ☐ 6.  Other Personal Injury *(Please specify)*:_____
- ☐ 7.  Products Liability
- ☐ 8.  All Other Diversity Cases:  *(Please specify)*_____
       _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SHEN, WEIPENG

**DEFENDANTS**

MERCK & CO., INC., ET AL.

**(b)** County of Residence of First Listed Plaintiff **Philadelphia**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Union**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability   ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel &   Pharmaceutical Slander   Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability   ☐ 368 Asbestos Personal ☐ 340 Marine   Injury Product ☐ 345 Marine Product   Liability | | ☐ 835 Patent – Abbreviated New Drug Application ☐ 840 Trademark | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | Liability   **PERSONAL PROPERTY** ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | Product Liability   ☐ 380 Other Personal | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | Injury   ☐ 385 Property Damage ☐ 362 Personal Injury -   Product Liability Medical Malpractice | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/   Sentence Accommodations   ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty mployment | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property |   **Other:** ☐ 446 Amer. w/Disabilities -   ☐ 540 Mandamus & Other Other   ☐ 550 Civil Rights ☐ 448 Education   ☐ 555 Prison Condition   ☐ 560 Civil Detainee -   Conditions of   Confinement | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); Title VII (42USC2000); Section 1981 (42USC1981); FLSA (29USC201)

Brief description of cause:
Violations of the ADA, Title VII, Section 1981, FLSA, PHRA, PMWA and the WPCL.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE **3/31/2026**

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____